**In re H.B.**

*Caprice Hicks-Bunting,* for mother.
*David Natan,* for CYS.
*Lisa McCoy,* guardian ad litem.

GORBEY, *J.,* May 18, 2011—

## FACTUAL AND PROCEDURAL HISTORY

T.B., Jr.[1], born January 28, 1998, H.B., born March 10,

---

1. The child, T., is hereby referred to as T.B., Jr., although the notice of appeal referred to him as T.B., The docket in the Clerk of Courts Office of Lancaster County, Pennsylvania has his name listed as T. B., Jr. The Jr. is included in this opinion so as to avoid confusion with his father, T. B., Sr.

2007, T.B., born November 11, 2000 and S., born May 11, 1994, are the children of T. B., Sr., (father) and P. G. (mother). The family first came to the attention of the Children and Youth Social Service Agency (agency) on November 3, 2008 when the agency learned that Mr. B. and his oldest son, M. were using marijuana in the house and that mother had been arrested for selling drugs to an undercover policeman. There was reportedly no gas, no heat and no food in the house. The agency provided services and mother and father signed a Family Service Plan on March 17, 2009. Then, unknown to the agency, the family was evicted on September 3, 2009 for non-payment of rent. The agency learned of the eviction on September 29, 2009, when father went to the Water Street Mission with the three youngest children to seek shelter. father tested positive for cocaine and marijuana and was refused shelter. The Mission informed the agency which started a successful search for father and the children, who had been living in father's car and then in an inappropriate house since the eviction. The agency learned also that mother had been jailed earlier in the month pursuant to her prior arrest. On November 25, 2009, after an adjudication and disposition hearing, the children were found to be dependent. S., the oldest child, came into care on July 27, 2010. She had given birth to a child on June 28, 2009, and had lived with the baby and its father in the paternal grandmother's home since then. The baby now lives with his father.

The younger children remained in foster care from

September 2009 until April 30, 2010, when father completed the requirements of the Family Service Plan and the children were released to him. He had been successfully discharged from a drug and alcohol program on December 4, 2009, and had successfully completed a parenting class on March 16, 2010 and had full time employment. (N.T. 23, 10/25/10) On May 7, 2010, the court ordered termination of court supervision and the three children were found to be not dependent.

The situation changed four months later when father tested positive for cocaine and alcohol and the children were re-placed in care on July 27, 2010. (N.T. 11, 10/25/10) On August 23, 2010, a CASA was appointed by the court. Father disputed the validity of the test, contending that the urine tested had not been his, and on October 27, 2010 the court directed that regular random testing be done as well as testing before each visit.

Father did not show up for any of the five requests for random testing. (N.T. 17-18, 10/25/10) At the time of an adjudication/disposition hearing on August 30, 2010, mother, who had been incarcerated from September 25, 2009 until August 18, 2010, was at Quehanna Boot Camp in Reading, PA, which was part of an adapt program which also provided a halfway house with relevant services. (N.T. 3, 8/25/2011). Residing in the half-way house on October 25, 2010, mother was present in court. (N.T. 32,10/25/2010) mother and father intended to live together after her release. (N.T. 29, 10/25/2010).

After the October 25, 2010 hearing, the three younger children remained in foster care. (N.T. 32, 10/25/2010). Maternal grandmother was a resource for 16-year old S., who stayed at the Youth Intervention Center until her grandmother was qualified as a foster parent. (N.T. 30, 10/25/2010). The Plans for both parents were reestablished, including drug, alcohol, mental health, parenting, and daily needs issues. (N.T. 33, 10/25/2010). It had been recommended that father attend NA and AA. He reported that he was attending meetings, but presented no documentation. (N.T. 30-31, 8/21/2011).

His housing was not appropriate for children. Prior to the March 21, 2011 hearing, S. decided to leave her grandmother and come back to Lancaster county to be with father. She again went into care.

Except for H., the children were adjusting well to their new foster homes. H. had problems when she was placed in the same foster home with T. and T. because she was acting out and getting more attention to the detriment of the older children. In the new home, severe behavioral problems began. The CASA in the case noted that H. had violent and frequent temper tantrums. She urinated in inappropriate places out of hostility. She destroyed property, attacked her siblings, and displayed disassociative behavior. She had a tentative diagnosis of reactive attachment disorder and was placed in a separate home, where her behavior responded well to a different parenting style. The children see each other at a bi-weekly visitation. (N.T. 10, 3/21/2011)

The agency did not recommend a goal change, but a Coby's caseworker and the children's guardian ad litem wanted a change of goal to adoption, because they both believed that the children need permanency and stability.

## ISSUE

Whether a change of goal is appropriate for four children in a situation in which a mother was unavailable because of incarceration for selling drugs, and the father was unable to refrain from drug use, maintain an adequate home and resources for his three children, and the oldest child, a teenager, had given birth to a baby in June of 2009 and did not have a stable residence with either her family or her baby's father.

## ANALYSIS

A dependent child is:

One who is without proper care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotion health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk. 42 Pa.C.S.A. § 6302

Given the facts of this case, which include mother's two

year incarceration, and father's drug use and homelessness and living with his children in his car, it is clear to the court that the B. children are dependent children. Once that has been decided, at a subsequent permanency review hearings, the court must consider the statutorily mandated factors of 42 Pa.C.S.A. § 6351(f). These are:

1. [To] determine the continuing necessity for and appropriateness of the placement;

2. [To] determine the appropriateness, feasibility and extent of compliance with the permanency plan developed for the child;

3. [To] determine the extent of progress made toward alleviating the circumstances which necessitated the original placement;

4. [To] determine the appropriateness and feasibility of the current placement goal for the child;

5. [To] project a likely date by which the goal for the child might be achieved;

And, further,

9. [I]f the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the home or to preserve and reunify the family need not be made or continue to be made, [to] determine whether the county agency has filed or

sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child... (*In re N.C.*, 909 A.2d. 818 (Pa. Super. 2006).

This last paragraph reflects the approach of the Federal Adoption and Safe Families Act, which considers the amount of time a child has been in care as a specific and important element in a goal change decision.

Essentially, the ASFA directs the emphasis away from the paramount importance previously enjoyed by parental rights to establish unequivocally that the goals for children in the child welfare system are safety, permanency and well-being.... The legislative of history of ASFA reveals that this act was designed to curb an inappropriate focus on protecting the rights of parents when there is a risk of subjecting children to long term foster care or returning them to abusive families. *In the Interest of C.B. and A.L., Minors*, 861 A.2d 287, 295 (Pa. Super. 2004).

The court considered all of the above-cited elements. The B. children clearly need to remain in placement at this time. Mother's compliance with the plan is far from complete, her having been in prison for most of the children's time in care. Although father seemed to have indicated that he had the strength and character to complete his plan and actually regained custody of his children, his relapse into drug use and failure to show up for any of the randomly scheduled tests presents a bright warning light to

the court. That relapse and apparently knowing avoidance of these tests makes it difficult for the court to ascertain how long it will take for father to be in a position, if ever, to regain his children.

Once a child has been adjudicated dependent, additional decisions are made according to his best interest. *In re J.S.W.*, 651 A.2d 167 (Pa. Super 1994). The court cannot believe that prolonging the current difficult situation, which has no end in sight, will serve the three B. children's best interests. Clearly, the intent of the legislature in providing the statutory instructions of Section 6351(f) is to provide a reasonable amount of time — i.e., at least 15 months — for a parent to regain control of his or her life in order to have his or her child returned. But, the section also indicates that past fifteen months, the court must consider whether the odds are against the parents regaining that control within a reasonable period of time and whether the child should therefore be permanently settled elsewhere in a healthy living environment. It is this court's opinion that mother and father have run out of time. If they were on the cusp of immediate success, the court would have the option of stretching the available time to allow the parties to finish their plans. These individuals have a long drug history and the court is not convinced that both can overcome their past difficulties and provide appropriate care for her children. And since the parties plan on residing together as a family, both must succeed, and neither's behavior has shown that success is near. The court therefore believes that the successful reunification

goal for these children must be changed so that they do not have to continue in the limbo caused by mother's and father's drug-linked instability.

These are troubled children. S. is a 16 year old mother who does not appear to have the ability to care for her child or even herself. At her age, she would not have a goal of adoption, but of another planned permanent living arrangement (APPLA) that will meet her current needs.

H. appears to have a relationship disorder which makes her interaction with others, both caretakers and siblings, behaviorally negative and physically violent. The other children are suffering from absence from the other members of their family. They have been moved several times and cannot depend on their parents to carry out their parental obligations. All of them need stability, consistency, love, support and guidance in their young lives. They should not have to wait until such future time until their father and mother are inclined to stop using drugs.

The case law is clear as to what children such as these deserve from the courts. Even when the parent makes earnest efforts the court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hopes for the future. *In re R.M.G., a minor*, citing in *In re Adoption of R.J.S.*, 901 A.2d 502 (Pa. Super. 2006). These parents are out of time in the presence of these children's needs.

## CONCLUSION

For the reasons stated above, the court finds that T.B.,

Jr., T. B., H. B. and S. B. are dependent children and have been in the custody of the agency in excess of fifteen months; therefore, these children's best interests demands that the goal for the first three children must be changed to adoption and the goal for S. must be changed to another planned permanent living arrangement